Samuel I. Jacobs
vs.                    Law No. 54084
United Electric Railways Co.

September 14, 1927.

SUMNER, J. Plaintiff has brought suit to recover an amount alleged to be due him for professional services rendered to one Mary Correia (now Mary Hogan) in connection with her claim against defendant for negligence in causing the death of her husband. He claims an attorney's lien under Chapter 301, Section 32, of the General Laws.

The jury returned a verdict for plaintiff in the sum of $450 and defendant has filed a motion for a new trial.

The plaintiff claims that he met Mrs. Correia at the office of one Fink (the employer of her husband) the day after her husband's death, and entered into an agreement with her by which he was to press her claim against defendant and receive as a fee therefor one-third of the amount recovered. He testifies as to services rendered by him and presents witnesses who testify as to services and also as to admission by Mrs. Correia that she had employed him.

Mrs. Correia and her mother, Mrs. Fracus, who was with her at her meetings with the plaintiff and apparently did most of the talking, deny that any agreement was made or that plaintiff was ever employed by them. Two or three days after plaintiff notified defendant of his employment, defendant questioned his authority and demanded a power of attorney from his client. This, plaintiff refused to get, and about a month later defendant settled Mrs. Correia's claim by paying her, or her guardian, $3000.

The professional attitude of plaintiff is open to serious question. Among the "Canons of Professional Ethics" adopted by the Rhode Island Bar Asso-

ciation, No. 27 reads: "It is also disreputable to seek out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients."

Plaintiff plainly violated this canon when he went to Fink's office and solicited employment by Mrs. Correia. Moreover, with extraordinary effrontery, he charged her $15 for this forty-five minute interview of his own seeking. His bill is exorbitant. He charged her $85 for two hours' work on the first day he met her. He claims to have spent four or five hours a day for three weeks on this case, although he has no books to show it. He had been admitted to the bar only six months before.

It may be noted that Mrs. Correia and her mother were on their way to get some mourning clothes when they were apparently enticed to Fink's office and that Mrs. Correia, then a girl of 18 years, was under the influence of deep grief, as testified to by some of the plaintiff's own witnesses. Her husband had been dead only sixteen hours at the time. Plaintiff evidently took advantage of their ignorance and grief in order to entangle them in his net. When his authority was questioned, he refused to get a power of attorney from his client. It would seem that if he had been honest, in his claims, he would have sought such power at once. His failure to do so throws discredit upon him. He says the agreement was made at Fink's office and his brother says it was made at the plaintiff's office; a very suggestive contradiction. He admits he said nothing to Mrs. Correia about her claim against Fink under the Workmen's Compensation Act, which claim he says was good. Nor did he apparently tell her that he was a stripling at the bar with little experience as a lawyer. He acted as attorney for Fink in his claim against the defendant on account of this same accident; an in-

teresting commentary on his ideas of professional ethics.

Even if Mrs. Correia did seemingly assent to the proposal of plaintiff while dazed by her calamity and ignorant of what she was doing, she would be amply justified in refusing to carry out her contract when she came to a full realization of what she had been led into by an unscrupulous attorney. She denies that she ever engaged plaintiff as her attorney, and the court believes her story.

Under Section 32 under which plaintiff brings suit, it is provided that, as a prerequisite to the lien, "the attorney does not agree to be responsible for costs of the suit". Plaintiff testifies that he told Mrs. Correia that she would have to pay the costs of the suit, but he added the costs would be nominal, which means, existing in name only. There was at least one witness from out of the State; there probably would be other witnesses, including doctors, whose fees must be paid, perhaps experts, with travelling expenses, X-ray pictures, possibly costs of transcript, expenses which might mount up into several hundred dollars before the termination of the litigation, yet plaintiff tells the prospective clients that the costs will be practically nothing. He was either deceiving Mrs. Correia or he expected to pay these expenses himself in violation of the statute under which he is proceeding.

The Court grants the defendant's motion for a new trial.

For plaintiff: Samuel I. Jacobs, Kernan, Hurley & Fowler.

For defendant: E. A. Sweeney, Clifford Whipple.